PNEUMATIC TRUCKING, INC.,

              Plaintiff(s),          CASE NUMBER:  05-74875
                                      HONORABLE VICTORIA A. ROBERTS

v.

LOCAL 164 INTERNATIONAL BROTHERHOOD
OF TEAMSTERS and LOCAL 406 INTERNATIONAL
BROTHERHOOD OF TEAMSTERS,

              Defendant(s).

AND

LARRY HESS and                  CASE NUMBER: 07-13015
TRUCK DRIVERS AND          HONORABLE VICTORIA A. ROBERTS
HELPERS LOCAL 164,

              Plaintiff(s),

v.

PNEUMATIC TRUCKING, INC.,
RICHARD F. SCHWARTZ, and
RUSSELL L. SCHWARTZ,

              Defendant(s).
_____/

## ORDER

## I.    INTRODUCTION AND PROCEDURAL HISTORY

This matter is before the Court on Local 164 International Brotherhood of

Teamsters ("Local 164"), Local 406 International Brotherhood of Teamsters ("Local

406"), and Larry Hess' ("Hess") "Motion for Summary Judgment."  (Doc. #15 and Doc.

#48).

Pneumatic Trucking, Inc ("Pneumatic") and Local 406 had a collective bargaining agreement ("CBA").  The CBA required Pneumatic to make weekly contributions to Central States Pension Fund from November 29, 1999 through July 31, 2004.

In August 2002, the International Brotherhood of Teamsters transferred the bargaining rights to the CBA from Local 406 to Local 164.

On May 5, 2004, Local 164 and Pneumatic entered into a written agreement to amend the CBA.  Pursuant to the agreement, Pneumatic's obligation to contribute to the pension fund terminated on June 1, 2003, and Pneumatic had to establish a 401(k) plan through TD Waterhouse Institutional Services.

On September 27, 2004, Russell L. Schwartz ("Russell") established a 401(k) plan on behalf of Pneumatic.  The 401(k) plan requires Pneumatic to make contributions starting June 1, 2003.  Richard F. Schwartz ("Richard") and Russell are trustees to the plan; Hess is a participant in the plan.

While Pneumatic stopped its contributions to the pension fund on June 1, 2003, it did not contribute to the 401(k) plan from June 1, 2003 through July 15, 2004 as required by the 401(k) plan established by Russell.

On December 23, 2005, Pneumatic filed a Complaint against Local 164 and Local 406 for breach of contract.  On July 19, 2007, Hess and Local 164 filed a Complaint against Pneumatic, Richard, and Russell for: (1) unpaid contributions; (2) breach of contract; and (3) breach of fiduciary duties.

On September 6, 2007, the Court consolidated the cases for discovery purposes and referred all pretrial matters to Magistrate Judge Steven D. Pepe.  This motion was filed on March 17, 2008.

Magistrate Judge Steven D. Pepe issued a Report and Recommendation on August 7, 2008. The Magistrate Judge recommends that the Court: (1) GRANT Local 164 and Local 406's motion on Pneumatic's Complaint; and (2) DENY Local 164/Local 406 and Hess' motion on their claims against Pneumatic, Richard, and Russell. According to the Magistrate Judge, Pneumatic's breach of contract claim is preempted by the Multiemployer Pension Plan Amendments Act of 1980 ("MPPAA"), but neither Pneumatic, Richard nor Russell is liable for the unpaid contributions to the 401(k) plan before July 16, 2004 based on the mutual mistake doctrine. He said the Court should reform the May 5th agreement to say contributions to the 401(k) plan are to begin on July 16, 2004, the date Central States Pension Fund received notice that Pneumatic's obligations to the pension fund terminated.

Pneumatic objects to the finding that its breach of contract claim is preempted by the MPPAA.

Local 164/Local 406 and Hess object for three reasons: (1) the mutual mistake doctrine was neither raised nor briefed by any party; (2) a mutual mistake does not exist where both parties were aware that Pneumatic could have conflicting obligations; and (3) the existence of an obligation to both Central States Pension Fund and the 401(k) plan does not warrant denial of summary judgment. They also object to a factual finding by the Magistrate Judge.

For the reasons more fully discussed below, the Magistrate Judge's recommendation is **ADOPTED**. However, the Court declines to reform the parties' agreement executed on May 5, 2004.

## II.    BACKGROUND

### A. Termination of Pneumatic's Obligation to Central States Pension Fund

Pneumatic and Local 406 had a Participation Agreement. Paragraph five of the Agreement outlines two steps necessary to terminate Pneumatic's obligation to Central States Pension Fund. First, there must be a contract or statute that says Pneumatic is no longer obligated to pay contributions to the pension fund.

Second, the pension fund's contract department must receive written notice that describes the reason why Pneumatic is no longer obligated to contribute. The notice must be sent certified mail with return receipt requested.

### B. January 2001 Oral Agreement to Terminate Pneumatic's Obligation to Central States Pension Fund, Unfair Labor Practice Charge, and Settlement

Pneumatic says, in January 2001: (1) Local 406 orally agreed to amend the CBA so Pneumatic could contribute to a 401(k) plan instead of the pension fund; and (2) the bargaining unit members represented by Local 406 approved the proposed amendment.

While the union concedes there was discussion of an amendment to the CBA, it disagrees that the January 2001 oral agreement was final. It says the bargaining unit members did not approve an amendment at that time; the members simply agreed to hold a vote to determine whether the CBA should be amended.

On July 16, 2003, Pneumatic filed an unfair labor practice charge with the National Labor Relations Board. Pneumatic alleged Local 406 orally agreed to terminate Pneumatic's obligation to the pension fund in January 2001, but Local 406 refused to sign a written agreement.

A settlement was reached on December 17, 2003. The union agreed to sign a document that embodies the 2001 discussion, conditioned on a secret ballot majority vote of the affected membership.

A majority of the bargaining unit voted in favor of an amendment to the CBA on January 31, 2004. The CBA was amended in writing on May 5, 2004.

Pneumatic says Central States Pension Fund received notice of the May 5th agreement on July 16, 2004; Central States says it received notice on August 11, 2004.

### C. Central States Pension Fund's Lawsuit Against Pneumatic

Meanwhile, Central States Pension Fund filed a lawsuit against Pneumatic on January 15, 2004 in the United States District Court for the Northern District of Illinois, because Pneumatic stopped making pension contributions to Central States on June 1, 2003. Central States sought payment of unpaid contributions to the pension fund from June 1, 2003 through July 31, 2004.

On December 3, 2004, the court held: (1) the alleged 2001 oral agreement between Pneumatic and Local 406 was insufficient to terminate Pneumatic's pension obligation to Central States; (2) Pneumatic is liable to Central States for unpaid pension contributions from June 1, 2003 through July 15, 2004; and (3) whether Pneumatic is liable for pension contributions from July 16, 2004 through July 31, 2004 depends on when Central States received notice of Pneumatic's written agreement with Local 406 to make contributions to a 401(k) plan instead.

### III. STANDARD OF REVIEW

Fed. R. Civ. P. 56(c) provides that summary judgment is appropriate "if the

pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." In reviewing a motion for summary judgment, "the evidence as well as all inferences drawn therefrom must be read in a light most favorable to the party opposing the motion." *Kochins v. Linden-Alimak, Inc.*, 799 F.2d 1128, 1133 (6th Cir. 1986).

The movant has the initial burden to demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). If the movant meets this burden, the nonmoving party must, by affidavit or otherwise as provided by Rule 56, "set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e). A genuine issue of material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The essential inquiry is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Id.* at 251-52. If the nonmoving party does not respond with specific facts showing a genuine issue for trial, summary judgment is appropriate. *Emmons v. McLaughlin*, 874 F.2d 351, 353 (6th Cir. 1989).

## IV.  PNEUMATIC'S COMPLAINT AGAINST LOCAL 164 AND LOCAL 406

Pneumatic's lawsuit, filed December 23, 2005, grew primarily out of the January 2001 oral agreement to amend the CBA and is focused on the increased withdrawal liability it says it has because of the delay in signing the agreement.

When a participating employer withdraws from a multiemployer pension plan,

6

such as Central States, the plan is entitled to "withdrawal liability," the difference between the present value of vested benefits and the current value of the plan's assets. *Pension Benefit Guar. Corp. v. R.A. Gray & Co.*, 467 U.S. 717, 725 (1984). "The [MPPAA] . . . requir[es] *a withdrawing employer* to fund its share of the plan obligations incurred during its association with the plan." *Connolly v. Pension Benefit Guar. Corp.*, 475 U.S. 211, 225 (1986) (emphasis added); *see also* 29 U.S.C. §1381(a) (it is "*the employer*" that is responsible for such liability) (emphasis added).

Pneumatic concedes that it is liable for $32,991.02 in withdrawal liability, but says Local 164 and Local 406 are liable for the additional $81,232.94 because they breached the oral agreement reached in January 2001 by not signing the agreement until May 5, 2004.

It should be noted the parties do not dispute that Pneumatic's withdrawal liability increased because more employees vested in the pension plan on January 1, 2004.

Further, Pneumatic says *Pittsburgh Mack Sales & Serv., Inc. v. Int'l Union of Operating Engineers*, 2007 WL 2907950 (W.D. Penn. Sept. 30, 2007) ("*Pittsburgh Mack*"), a case relied on by Local 164 and Local 406, is not applicable. Pneumatic says its lawsuit is not one to enforce a contractual provision requiring indemnification; it seeks breach of contract damages.

Importantly, Pneumatic does not cite any case law to support its argument.

Because Congress – through the enactment of the MPPAA – placed withdrawal liability upon *employers* to discourage them from withdrawing from multiemployer plans, neither Local 164 nor Local 406 can be liable for Pneumatic's withdrawal liability. *See Connolly*, 475 U.S. at 225; 29 U.S.C. §1381(a).

7

Although *Pittsburgh Mack* is not essential to the Court's decision, that case is persuasive. *Pittsburgh Mack* involved two collective bargaining agreements that required the union to indemnify the employer for withdrawal liability. *Pittsburgh Mack*, 2007 WL 2907950 at *3. Relying on *Connolly*, the court held the indemnification clauses were unenforceable and preempted by the MPPAA and public policy because they defeat Congress's intent that withdrawal liability be born by the employer. *Id.* at *1; *see also Connolly*, 475 U.S. at 223-24 ("When contracts deal with a subject matter which lies within the control of Congress, they have a congenital infirmity. Parties cannot remove their transactions from the reach of dominant constitutional power by making contracts about them") (quoting *Norman v. Baltimore & Ohio R. Co.*, 294 U.S. 240, 307-08 (1935)).

The Court realizes that Pneumatic's CBA with Local 164/Local 406 does not contain an indemnification clause. Nevertheless, the essence of Pneumatic's claim is that Local 164 and Local 406 must "indemnify" it for the additional withdrawal liability. Thus, Pneumatic's breach of contract claim is preempted by the MPPAA.

Irrespective of how Pneumatic frames its cause of action, there is no genuine issue of material fact regarding whether Local 164/Local 406 is liable for Pneumatic's additional withdrawal liability; it is not liable as a matter of law.

**V.    HESS AND LOCAL 164's COMPLAINT AGAINST PNEUMATIC, RICHARD, AND RUSSELL**

**A.    Hess and Local 164's Claims Against Pneumatic for its Failure to Contribute to the 401(k) Plan from June 1, 2003 through July 15, 2004 (Counts I and IV)**

Hess and Local 164's lawsuit, filed July 19, 2007, is focused on Pneumatic's

failure to make contributions to the 401(k) plan from June 1, 2003 through July 15, 2004.

Hess alleges Pneumatic owes him unpaid contributions to the 401(k) plan from June 1, 2003 through July 15, 2004. *See* 29 U.S.C. §1132(a)(1)(B) ("A civil action may be brought by a participant . . . to recover benefits due to him under the terms of his plan . . . [.]").

Local 164 alleges Pneumatic breached the May 5th agreement by not contributing to the 401(k) plan from June 1, 2003 through July 15, 2004. *See* 29 U.S.C. §185(a) ("Suits for violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce . . . may be brought in any district court of the United States having jurisdiction of the parties[.]").

To determine whether Pneumatic is liable to Hess and Local 164, the Court interprets the May 5th agreement using basic principles of contractual interpretation. *See Int'l Union, United Auto., Aerospace, and Agric. Implement Workers of Am. v. Yard-Man, Inc.*, 716 F.2d 1476, 1479 (6th Cir. 1983) (citations omitted). For example, the agreement must be construed so that no term is rendered nugatory. *Id.* at 1480 (citing *Cordovan Associates, Inc. v. Dayton Rubber Co.*, 290 F.2d 858, 861 (6th Cir. 1961)). Further, if the language in the agreement is clear, the intent and understanding of the parties is irrelevant. *Trustees for Michigan BAC Health Care Fund v. OCP Contractors, Inc.*, 136 Fed.Appx. 849, 851 (6th Cir. June 17, 2005) (quoting *Trustees of BAC Local 32 Ins. Fund v. Ohio Ceiling & Partition Co., Inc.*, 48 Fed.Appx. 188, 192 (6th Cir. Oct. 4, 2002)). If the language is ambiguous, however, whether an employer has an obligation to contribute to a particular fund will be determined in light of the parties' intent. *OCP*

*Contractors, Inc.*, 136 Fed.Appx. at 851.

On May 5, 2004, the parties agreed:

(1)     To terminate the obligation of [Pneumatic] under the [CBA] to make contributions to [Central States] effective June 1, 2003; [and]

(2)     In place of such obligation to make contributions to Central States, [Pneumatic] shall establish through TD Waterhouse Institutional Services a 401(k) Plan. They shall make that plan available to each employee covered by the collective bargaining agreement and shall, effective June 1, 2003, contribute the amount of $69.00 per week or 6.5% of the employee's gross wage, whichever is greater, for each employee into the 401(k) plan.

The Court finds the "in place of" language in the May 5th agreement is clear and states the parties' intent: Local 164 and Pneumatic agreed that Pneumatic would contribute to either the pension fund or the 401(k) plan, not both.

If Pneumatic must contribute to Central States Pension Fund from June 1, 2003 through July 15, 2004 – because of the ruling from the federal court in Illinois – Pneumatic says that requiring it to contribute also to the 401(k) plan for that same time period would be contrary to the parties' intent and results in "double pay" to the employees – a result Pneumatic says is disfavored. *See id.:*

[i]n situations where an employer is exposed to conflicting [collective bargaining agreements] that purport to impose a duty to 'double pay' for the same job, the collecting trustee must show that the [collective bargaining agreement] created a contractual obligation for the employer to make contributions to both plans, even though only one union did the work.

(Citing *Trustees of BAC Local 32 Ins. Fund v. Ohio Ceiling & Partition Co., Inc.*, 48 Fed.Appx. 188, 198 (6th Cir. Oct. 4, 2002)).

According to Pneumatic: (1) its obligation to Central States did not terminate on June 1, 2003 because Local 164/Local 406 delayed signing the oral agreement reached

in January 2001; and (2) it should not be punished while Local 164/Local 406 obtains a windfall.

Local 164 says *OCP Contractors, Inc.* does not stand for the proposition that an employer can never be required to "double pay." *See Plasterers Local 67 Pension Trust Fund v. Niles Group, Ltd.*, 2007 WL 627869 at *2 (E.D. Mich. Feb. 23, 2007). Further, Local 164 says the Court should decline to apply the mutual mistake doctrine. According to Local 164, the mutual mistake doctrine requires the Court to ask whether the parties were mistaken as to a fact in existence at the time the agreement was executed, and Local 164 says there are insufficient facts to make that determination. *See Lenawee County Bd. of Health v. Messerly*, 417 Mich. 17, 24-25 (1982) (finding the district court did not directly resolve the factual dispute regarding whether the defect arose before or after the contract was executed).

Local 164 says there is no mutual mistake because both parties were aware that Pneumatic could be liable for "double payment." According to Local 164, Pneumatic was aware of this possibility when it signed the May 5, 2004 agreement – the order from the Illinois court simply made that possibility a reality.

Local 164 is incorrect about the nature of the mistake.

While the May 5th agreement clearly says Pneumatic's obligation to Central States was to end on June 1, 2003 and its obligation to the 401(k) plan was to begin that same date, the facts support the conclusion that Local 164 and Pneumatic mistakenly assumed Pneumatic's obligation to Central States could retroactively terminate on June 1, 2003. This assumption was false because Central States had to receive formal notice of the written agreement before Pneumatic's obligation could be

11

terminated.  *See* Participation Agreement at ¶5.

Because Local 164 and Pneumatic were operating under a mistake of fact when they signed the agreement on May 5, 2004, the Court finds the agreement does not express the parties' true intent.

Courts reform agreements.  *See Ross v. Damm*, 271 Mich. 474, 481 (1935) ("where there is clear evidence that both parties reached an agreement, but as the result of mutual mistake, . . . the instrument does not express the true intent of the parties, equity will reform the instrument so as to express what was actually intended") (citations omitted).

The Magistrate Judge recommends this Court reform the May 5th agreement. The Court declines to do so.

The issue of whether Pneumatic is liable for unpaid contributions to the 401(k) beginning July 16, 2004 – the date on which Pneumatic alleges Central States received notice of the agreement – was before the United States District Court of the Northern District of Illinois, it is not before this Court.  Hess and Local 164's Complaint only alleges Pneumatic is liable from June 1, 2003 through July 15, 2004.

**B.    Local 164 and Hess' Claims that Richard and Russell Breached Their Fiduciary Duties (Counts II and III)**

Local 164 and Hess allege Richard and Russell breached their fiduciary duties to the beneficiaries of the 401(k) plan by not taking steps to collect unpaid contributions to the plan.

Because the Court holds that Pneumatic is not liable for unpaid contributions to the 401(k) plan from June 1, 2003 through July 15, 2004, it follows that no genuine

issue of material fact exists regarding whether Richard or Russell breached their fiduciary duties to collect unpaid contributions during that time period.

## VI.    CONCLUSION

The Court **ADOPTS** the Magistrate's recommendation.  However, it declines to reform the agreement executed on May 5, 2004.

Local 164 and Local 406's motion on Pneumatic's breach of contract claim is **GRANTED**; Pneumatic's Complaint is **DISMISSED**.

Local 164 and Hess' motion for summary judgment on their claims for breach of fiduciary duty and unpaid contributions to the 401(k) plan from June 1, 2003 through July 15, 2004 is **DENIED**.

**IT IS ORDERED**.


s/Victoria A. Roberts
Victoria A. Roberts
United States District Judge

Dated:  November 7, 2008

The undersigned certifies that a copy of this document was served on the attorneys of record by electronic means or U.S. Mail on November 7, 2008.

s/Linda Vertriest
Deputy Clerk